JOSEPH MERLINO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Merlino v. Commissioner
Docket No. 30467-91
United States Tax Court
T.C. Memo 1993-200; 1993 Tax Ct. Memo LEXIS 203; 65 T.C.M. (CCH) 2593; May 11, 1993, Filed *203 An appropriate order and decision will be entered denying respondent's motion and entering decision for respondent. On September 23, 1987, an armored truck robbery occurred in Philadelphia, Pennsylvania. The participants in the robbery were Stephen Rinaldi, Richard Barone, and Joseph Merlino (petitioner). The amount of cash taken was $ 352,150. None of this amount has been recovered. Respondent determined that petitioner received $ 207,650 of the cash stolen in the robbery, and that, with respect to this amount, petitioner was liable for: (1) A tax deficiency of $ 77,587, (2) an addition to tax of $ 4,187, for an underpayment of estimated tax under sec. 6654, I.R.C., (3) an addition to tax of $ 58,190, for fraud under sec. 6653(b)(1)(A), I.R.C., and (4) an addition to tax equal to 50 percent of the interest due on the tax deficiency, for fraud under sec. 6653(b)(1)(B), I.R.C.
1. Held: Respondent's determination of a tax deficiency and an addition to tax under sec. 6654, I.R.C., is sustained. 2. Held, further, respondent's determination of fraud under sec. 6653(b)(1)(A) and (B), I.R.C., is sustained because respondent produced sufficient evidence to sustain respondent's *204 burden of proof with respect to fraud. For petitioner: Joseph C. Santaguida. For respondent: Michael P. Corrado. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: This case is before the Court pursuant to the filing of a petition by Joseph Merlino (petitioner) for a redetermination of respondent's determinations set forth in a notice of deficiency issued to petitioner on October 28, 1991. The notice reflects respondent's determinations of a deficiency in, and additions to, petitioner's 1987 Federal income tax as follows: Additions to Tax
Sec. Sec. Sec.
Year
Deficiency
6653(b)(1)(A)
6653(b)(1)(B)
6654
1987
$ 77,587
$ 58,190
50% of the
$ 4,187
interest due on
the deficiency
The principal issues for decision are: (1) Whether petitioner is liable for the tax deficiency, and the addition to tax for an underpayment of estimated tax under section 6654, as set forth in respondent's notice of deficiency, and (2) whether respondent has met the burden of proof for the additions to tax for fraud under section 6653(b)(1)(A) and (B), I.R.C. We answer both issues in the affirmative and hold for respondent. Unless otherwise indicated, all section *205 references are to the Internal Revenue Code in effect for 1987, the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Most of the facts have been stipulated and are so found. The stipulations and accompanying exhibits are incorporated herein by this reference. At the time he filed his petition in this case, petitioner resided in Philadelphia, Pennsylvania. On September 23, 1987, an armored truck robbery occurred in Philadelphia, Pennsylvania. The participants in the robbery were Stephen Rinaldi (Rinaldi), Richard Barone (Barone), and petitioner. The amount of cash taken was $ 352,150. None of this amount has been recovered. Rinaldi assumed the responsibility for safeguarding the money in the armored truck. Subsequently, he betrayed his employer and diverted $ 352,150 in cash from the truck to Barone. Barone and Rinaldi initially agreed on the plan to steal this money and divide the proceeds equally amongst themselves. However, unbeknownst to Rinaldi, Barone and petitioner had also discussed stealing the money themselves. Immediately following the robbery, petitioner took sole possession of the total proceeds *206 of $ 352,150, but eventually gave Rinaldi and Barone a share of the proceeds equal to $ 14,500 and $ 130,000, respectively. Within 2 weeks after the robbery, petitioner and Barone went to Las Vegas, Nevada, for the purpose of exchanging for "clean" money some of the stolen money which petitioner believed could have been "marked". Petitioner made this trip using an alias. On August 4, 1989, in connection with the robbery, a criminal indictment was issued by a Federal grand jury charging petitioner with: (1) Conspiracy to commit an offense against the United States, 18 U.S.C. sec. 371, (2) theft from an interstate shipment, 18 U.S.C. sec. 659, (3) receipt of money taken from an interstate shipment, 18 U.S.C. sec. 659, and (4) aiding and abetting with respect to the charges under 18 U.S.C. section 659, 18 U.S.C. sec. 2. On January 12, 1990, following a criminal trial, a jury returned a guilty verdict against petitioner on all these charges. On March 8, 1990, petitioner was sentenced to incarceration for a *207 period of 4 years and, upon his release, probation for 5 years including 6 months in a community treatment center. Petitioner did not file a 1987 Federal income tax return to report his receipt of some of the stolen proceeds. Petitioner previously filed Federal income tax returns for the 1983, 1984, 1985, and 1986 taxable years, and subsequently filed a Federal income tax return for the 1989 taxable year. Petitioner was aware of his duty to file a 1987 Federal income tax return. On October 28, 1991, respondent timely issued to petitioner a notice of deficiency for the 1987 taxable year. This notice reflected respondent's determination that petitioner had received and retained $ 207,650 of the proceeds from the robbery (i.e., total stolen proceeds ($ 352,150) less amounts given to Rinaldi ($ 14,500) and Barone ($ 130,000)). Prior to petitioner's criminal trial, Rinaldi and Barone pleaded guilty to their participation in the robbery. Rinaldi provided the Federal Bureau of Investigation (FBI) with a signed statement incriminating himself, Barone, and petitioner in the robbery and tying the three into the receipt of the stolen proceeds. The signed statement is a jointly stipulated *208 exhibit. Rinaldi and Barone testified against petitioner at petitioner's criminal trial. Petitioner was present and represented by counsel who cross-examined both witnesses. At petitioner's trial in the instant case, respondent called Rinaldi as a witness. Rinaldi answered some preliminary questions (e.g., name, address, age), but refused to answer any further questions claiming a privilege against self-incrimination under the Fifth Amendment to the United States Constitution. [1] *209 Respondent offered into evidence, under Fed. R. Evid. 804(a)(1) and (b)(1), [2] Rinaldi's prior testimony that was given at the criminal trial of petitioner. Petitioner objected to the admission into evidence of this testimony arguing that, for purposes of these rules, Rinaldi was not unavailable as a witness, and petitioner's interests in the instant case were not similar to his interests in the criminal trial. We accepted this prior testimony into evidence over petitioner's objections. Respondent's counsel stated at trial that respondent would have called Barone as a witness; however, respondent was unable to locate Barone to procure his attendance at trial. Respondent offered into evidence, under Fed. R. Evid. 804(a)(5) and (b)(1), [3] the prior testimony of Barone given at petitioner's criminal trial. Petitioner objected to the admission into evidence of this testimony with arguments similar to those that he made with respect to Rinaldi's prior *210 testimony. Respondent represented at trial that respondent tried unsuccessfully to locate Barone by contacting certain persons. Respondent contacted Barone's attorney. In this regard, respondent was trying to locate and serve Barone with the assistance of Barone's attorney and it was not until 7 days before trial that his attorney notified respondent that this would no longer be possible. Respondent also contacted an assistant district attorney and a public defender, both located in Philadelphia and both involved in certain criminal matters that Barone had pending in that city. Further, respondent contacted a deputy attorney general and a public defender, both located in New Jersey and both involved in criminal matters that Barone was previously convicted of *211 in that State. Respondent also tried unsuccessfully to locate and serve Barone utilizing the services of two of respondent's experienced employees, one a revenue agent and the other a criminal investigation division (CID) special agent. The revenue agent checked all available computerized records of the Internal Revenue Service and found two possible "leads" on Barone's address: A current address of Barone's ex-wife and an extract of a record obtained from the Philadelphia Police Department that listed a second address for Barone. The revenue agent, on numerous occasions, the first being 5 days before trial, tried unsuccessfully to locate and serve Barone at these two locations. Further, the revenue agent tried unsuccessfully to obtain the current location of Barone by speaking to persons at these addresses. The CID special agent, approximately 30 to 45 days before trial, tried unsuccessfully to locate Barone by contacting an FBI agent who previously was involved in a case with Barone. Further, the special agent tried unsuccessfully to locate Barone by contacting Barone's probation officer, and assisted the revenue agent in attempting to serve a subpoena on Barone at the two *212 addresses mentioned above. OPINION Except with respect to respondent's allegation of fraud, the burden of proof is on petitioner to show that respondent's determinations as set forth in the notice of deficiency are incorrect. Rule 142(a) and (b); Welch v. Helvering, 290 U.S. 111, 115 (1933). At trial, petitioner waived his opening statement and rested his case without introducing any exhibits or calling any witnesses. Although petitioner and respondent jointly filed stipulated facts and exhibits, these stipulations do not sustain petitioner's burden of proof. Following petitioner's resting of his case, respondent made a motion asking the Court to issue a default judgment against petitioner with respect to those matters for which petitioner has the burden of proof, namely, the tax deficiency and the addition to tax under section 6654. Rules 123(a), 142(a). Petitioner opposed respondent's motion contending for the first time that respondent's determinations were arbitrary and capricious. We took respondent's motion under advisement. Respondent's motion will be denied as moot. Petitioner's contention that respondent's determinations were arbitrary *213 and capricious is not an issue that petitioner properly placed before the Court. Petitioner's first mention of this contention was at trial in response to respondent's motion for a default judgment. If petitioner had wanted this allegation to be at issue, he should have so provided in his petition.[4] *214 By failing to raise this contention as an issue in the assignment of errors in his petition, petitioner is deemed to have conceded this issue. [5]Rule 34(b)(4); Jarvis v. Commissioner, 78 T.C. 646, 658 n.19 (1982). Accordingly, the record is barren of sufficient evidence to sustain petitioner's burden of proof with respect to the tax deficiency and the addition to tax under section 6654, and we must sustain respondent's determinations with respect to these items. Hatfield v. Commissioner, 68 T.C. 895, 898 (1977). Respondent bears the burden of proving by clear and convincing evidence that petitioner is liable for an addition to tax for fraud under section 6653(b)(1)(A) and (B). Sec. *215 7454(a); Rule 142(b). Respondent must meet this burden through affirmative evidence because fraud is never imputed or presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Whether fraud exists in a given situation is a factual determination that must be made after reviewing the particular facts and circumstances of the case. DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992). In relevant part, section 6653(b)[6] provides: (1) In general. -- If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to the sum of -- (A) 75 percent of the portion of the underpayment which is attributable to fraud, and (B) an amount equal to 50 percent of the interest payable under section 6601 with respect to such portion for the period beginning on the last day prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax or, if earlier, the date of the payment of the tax.
(2) Determination of portion *216 attributable to fraud. -- If the Secretary establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes is not attributable to fraud.
Thus, to sustain an allegation of fraud under section 6653(b)(1)(A) and (B), respondent must prove that petitioner underpaid his taxes in 1987, and that some part of this underpayment was due to fraud. Secs. 6211, 6653(b)(1) and (c)(1); see also sec. 301.6211-1(a), Proced. & Admin. Regs. (amount reported considered zero if taxpayer did not file a Federal income tax return). If respondent establishes that some part of this underpayment was due to fraud, the entire underpayment is treated as attributable to fraud unless petitioner proves otherwise. Sec. 6653(b)(2). *217 During respondent's case-in-chief, respondent called Rinaldi as a witness and wanted to call Barone as a witness. We concluded that Rinaldi, after answering the preliminary questions mentioned above, had a right under the Fifth Amendment to refuse to answer any further questions because there was a rational basis to believe his answers might incriminate him. See, e.g., Minnesota v. Murphy, 465 U.S. 420, 429 (1984); Lefkowitz v. Turley, 414 U.S. 70, 77-78 (1973); see also United States v. Yurasovich, 580 F.2d 1212 (3d Cir. 1978). Accordingly, we held that Rinaldi was "unavailable as a witness" within the meaning of Fed. R. Evid. 804(a)(1). United States v. Gibbs, 739 F.2d 838, 848 (3d Cir. 1984) (en banc) (person deemed unavailable as a witness if court upholds person's claim of privilege against self-incrimination). On brief, petitioner concedes that he agrees with this holding. We also concluded that petitioner had an opportunity and similar motive to develop this prior testimony by cross-examination at the time of petitioner's criminal trial. Petitioner *218 was present and represented by counsel during this prior testimony, and petitioner's counsel cross-examined Rinaldi. Petitioner faced, and eventually received, a criminal conviction and lengthy prison term based on Rinaldi's prior testimony which implicated petitioner in the armored truck robbery and the receipt of the stolen cash. Thus, petitioner's motive to rebut and/or discredit Rinaldi's testimony at petitioner's criminal trial was as strong as, if not greater than, his motive in the instant case. With respect to Barone, the Supreme Court has stated that a witness in a criminal case is not unavailable unless the proponent has made a "good-faith effort" before trial to locate and procure the witness's attendance at trial. Ohio v. Roberts, 448 U.S. 56, 74-75 (1980). Although a standard less stringent than a "good-faith effort" may apply in this Court, [7] we concluded that respondent's attempts to locate and serve Barone met the more stringent "good-faith effort" standard and, accordingly, that Barone was unavailable as a witness for purposes of Fed. R. Evid. Rule 804(a)(5). Lloyd v. American Export Lines Inc., 580 F.2d 1179, 1184 (3d Cir. 1978); *219 see also Azalea Fleet, Inc. v. Dreyfus Supply & Machinery Corp., 782 F.2d 1455, 1461 (8th Cir. 1986), and the cases cited therein (a finding that a witness is unavailable is within the trial court's discretion); Bailey v. Southern Pacific Transportation Co., 613 F.2d 1385, 1389-1390 (5th Cir. 1980) (trial court has discretion to accept or reject counsel's representations about unavailability).
*220 Petitioner contends that Barone was not unavailable as a witness because respondent waited until 5 days before trial to serve Barone. Waiting 5 days before trial, petitioner argues, is too late to constitute unavailability. To support his argument, petitioner cites and relies solely on United States v. Puckett, 692 F.2d 663 (10th Cir. 1982). The instant case is easily distinguishable from the holding in Puckett. In Puckett, the Court of Appeals for the Tenth Circuit stated that the trial court properly exercised its discretion when the trial court held that a person was not unavailable as a witness because the proponent waited until near the end of the second week of trial to attempt to issue a subpoena. Id. at 670. Two weeks into the trial is different from 5 days before trial. See, e.g., Azalea Fleet, Inc. v. Dreyfus Supply & Machinery Corp., 782 F.2d 1455, 1460-1461 (8th Cir. 1986) (person unavailable as a witness where process server waited until 3 days before trial to attempt to serve). Petitioner also makes no showing that an earlier attempt on respondent's part would *221 have secured Barone's presence at trial. With respect to petitioner's remaining arguments concerning the unavailability of Barone, we have considered these arguments and find them unpersuasive. We have also considered petitioner's arguments concerning a dissimilarity of interests, and reject those arguments for the same reasons as mentioned above with respect to Rinaldi. The record is replete with facts showing that petitioner was involved in the armored truck robbery and received a share of the stolen cash. The record also shows that petitioner did not file a 1987 Federal income tax return to report his receipt of these proceeds. An unlawful gain, such as the receipt of the stolen proceeds by petitioner, constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it. Rutkin v. United States, 343 U.S. 130, 137 (1952). Accordingly, we hold that respondent has proven the first prong necessary to sustain an allegation of fraud under section 6653(b)(1)(A) and (B), namely, that petitioner underpaid his 1987 Federal income taxes by not reporting and paying the *222 appropriate amount of taxes on the stolen proceeds. Respondent must also prove the second prong of the two-prong test, namely, that some part of the underpayment is attributed to fraud. In proving such prong, respondent must clearly show that petitioner intended to evade a tax known or believed to be owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). Respondent may rely on circumstantial factors emanating from petitioner's entire course of conduct. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). These circumstantial factors may be used to prove conduct of petitioner that was intended to conceal, mislead, or otherwise prevent the collection of tax. Rowlee v. Commissioner, supra at 1123-1124; Beaver v. Commissioner, 55 T.C. 85, 92-93 (1970). The "badges of fraud", which we consider to be nonexclusive, include: (1) Understatement of income, (2) inadequate records, (3) failure to file tax returns, (4) implausible or inconsistent explanations of behavior, *223 (5) concealing assets, (6) failure to cooperate with tax authorities, (7) engaging in illegal activities, (8) attempting to conceal activities, (9) dealings in cash, and (10) failure to make estimated tax payments. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; see also Meier v. Commissioner, 91 T.C. 273, 297-298 (1988). The "badges of fraud" in the instant case are plentiful. These "badges" include, with respect to the 1987 taxable year, that petitioner: (1) Did not file a Federal income tax return, (2) concealed assets, (3) failed to cooperate with tax authorities, (4) engaged in illegal activities, (5) attempted to conceal activities, (6) dealt in cash, and (7) failed to make estimated tax payments. Petitioner was also aware of his obligation to file a 1987 Federal income tax return, as evidenced by his filing of such returns prior to 1987 and after 1988, and by a jointly stipulated fact. Petitioner's trip to Las Vegas to exchange some of the stolen proceeds for "clean" cash, and the use of an alias, are also clear examples of petitioner's attempt *224 to disguise the truth of this matter and avoid the collection of the correct 1987 Federal income tax due from him. Accordingly, we hold that respondent has proven that some of petitioner's underpayment is due to fraud by showing a clear intent on the part of petitioner to evade a tax, with respect to the stolen proceeds, known or believed to be owing. Respondent's notice of deficiency provides that the total deficiency is attributable to fraud. We agree. By showing that some part (if not all) of the underpayment is attributable to fraud, the total underpayment is deemed attributable to fraud unless petitioner shows otherwise. Sec. 6653(b)(2). Petitioner has not done so. We have considered petitioner's arguments concerning the fraud issues and have found them unpersuasive. Accordingly, petitioner is liable for the additions to tax for fraud under section 6653(b)(1)(A) and (B), as determined by respondent. For the foregoing reasons, An appropriate order and decision will be entered denying respondent's motion and entering decision for respondent. Footnotes
1. In relevant part, the Fifth Amendment to the United States Constitution↩ provides that no person "shall be compelled in any criminal case to be a witness against himself".
2. Fed. R. Evid. 804(a)(1) provides that a person (declarant) is unavailable as a witness if the declarant is "exempted by ruling of the court on the ground of privilege from testifying concerning the subject matter of the declarant's statement". Fed. R. Evid. 804(b)(1)↩ allows for the admission into evidence of former testimony of a declarant who is unavailable as a witness in a current trial when the former testimony was "given as a witness at another hearing * * * [and] the party against whom the testimony is now offered * * * had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."
3. Fed. R. Evid. 804(a)(5)↩ provides that a person (declarant) is unavailable as a witness if the declarant "is absent from the hearing and the proponent of his statement has been unable to procure his attendance * * * by process or other reasonable means."
4. Rule 34(b)(4) and (5) (petition shall contain clear and concise assignments of each and every error claimed made by respondent in respondent's determination, and clear and concise statements of the facts on which petitioner bases the assignments of error); see also Rollert Residuary Trust v. Commissioner, 80 T.C. 619, 636 (1983), affd. 752 F.2d 1128 (6th Cir. 1985); Jarvis v. Commissioner, 78 T.C. 646, 658 (1982); Messer v. Commissioner, 52 T.C. 440, 455 (1969), affd. 438 F.2d 774 (3d Cir. 1971); Frentz v. Commissioner, 44 T.C. 485, 491 (1965) ("The Court has held on numerous occasions that it will not consider issues which have not been pleaded."), affd. 375 F.2d 662↩ (6th Cir. 1967).
5. We note, however, that the record does not support petitioner's contention that respondent's determinations were arbitrary and capricious. Respondent's determinations would be arbitrary and capricious if respondent could not present some predicate evidence connecting the taxpayer to the charged activity. Anastasato v. Commissioner, 794 F.2d 884, 887 (3d Cir. 1986), vacating T.C. Memo. 1985-101; Gerardo v. Commissioner, 552 F.2d 549, 554 (3d Cir. 1977), affg. in part and revg. in part T.C. Memo. 1975-341↩. Petitioner's conviction for the armored truck robbery, the jointly stipulated sworn affidavit, and the prior testimony of Rinaldi and Barone, among other things, established a solid evidentiary foundation that clearly connects petitioner with the tax-generating activity (i.e., the armored truck robbery).
6. Sec. 1503(a) of the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, 100 Stat. 2085, 2742-2743, previously amended sec. 6653(b)(1) and (2) to read as set forth in the text above. This amendment was effective for returns the due date of which, without regard to extensions, was after Dec. 31, 1986. Immediately before its amendment by the TRA, sec. 6653(b)(1) and (2) provided: (1) In General. -- If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. (2) Additional Amount for Portion Attributable to Fraud. -- There shall be added to the tax (in addition to the amount determined under paragraph (1)) an amount equal to 50 percent of the interest payable under section 6601 -- (A) with respect to the portion of the underpayment described in paragraph (1) which is attributable to fraud, and (B) for the period beginning on the last day prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax).
Sec. 1015(b)(2)(B) of the Technical and Miscellaneous Revenue Act of 1988 (TAMRA), Pub. L. 100-647, 102 Stat. 3342, 3569, subsequently amended sec. 6653(b)(1), but not sec. 6653(b)(2), as set forth in the text above. This amendment was effective for all returns the due date of which, without regard to extensions, was after Dec. 31, 1988. Immediately following its amendment by the TAMRA, sec. 6653(b)(1) and (2) provided: (1) In General. -- If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud. (2) Determination of portion attributable to fraud. -- If the Secretary establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes is not attributable to fraud.↩
7. See, e.g., Zenith Radio Corp. v. Matsushita Electric Industries Co., 505 F. Supp. 1190, 1249 (E.D. Pa. 1980), revd. on other grounds sub nom. In re Japanese Electronic Products Antitrust Litigation, 723 F.2d 238↩ (3d Cir. 1983) ("In civil cases, it has long been the rule that inability to procure attendance by 'process or other reasonable means' is satisfied by demonstration of inability to serve a subpoena. * * * We have found nothing to indicate that the adoption of the Federal Rules of Evidence altered this long-standing rule."). See generally 2 Strong, McCormick on Evidence, sec. 253, at 135 (4th ed. 1992).